Thank you, your honors. May it please the court, my name is Alan Clendaniel and I'm counsel for Mr. Ennen and I'd like to reserve a minute for rebuttal. The Alaska State Trooper's entry into Mr. Ennen's home was unconstitutional, which rendered the subsequent search warrant unconstitutional as fruit of the poisonous tree. But even if the entry was legal, the subsequent invasive search of his home was also unconstitutional. Now going back to the entry, Mr. Ennen did not consent to the entry and the district court erred in finding that he did. Is that a clearly erroneous judgment? Is that the standard we're going to review? Yes, it is. And how do we know that it's clearly erroneous? Good question. In this case, we had a recording and I know that the government has asked to have that be lodged as an exhibit. And the recording is a good recording. It does not pick up any audible consent, any specific... I've listened to the recordings and I cannot hear the words, you know, come in. But it's clear that something is spoken in that interlude where the trooper said he said come in. And I've listened to it several times and couldn't clearly hear that, but I couldn't clearly not hear that either. And so at that point, if there had been no recording at all, we would have had a conflict between Mr. Ennen and the trooper that would have had to have been resolved by somebody. And if we'd had no recording at all and the district court had said I choose to believe the trooper, how would you beat that as clearly erroneous? What are you going to do? I'm going to distinguish the two situations. The recording does have a period where there's some possible mumbling going on. But the recording gives us the story of the situation, of how the timeline and the other things that are said. So we show up at the door, knock, knock, knock. Mr. Ennen says hang on, hang on, don't come in. Then in a matter of minutes, I mean a matter of seconds, the trooper's in the house. It's just implausible to start with hang on, hang on, and my client used some rough language, to suddenly, oh, come on in. And it's so quick when you actually listen to the recording as you have. We're talking about three or four seconds here. It's just implausible to me that Mr. Ennen is going to say come on in, especially given the fact that he had a marijuana grow in the small place and a rudimentary pipe bomb. So that's my answer to your question there. The recording is different than if we just had the trooper's word versus the criminal defendant's word. What did we do with the finding of the court that there was enough evidence to show that the defendant said come on in? He believed the officer. He did believe the officer, and I think that was clearly erroneous given the context of the recording. Also, the recording is fairly, it's a good recording. But don't we construe the evidence in the light most favorable to the prevailing party? Well, the standard here is clearly erroneous. And the context of the recording, I think, meets that standard. Because of my comments to my smate, I'd also add that Trooper Cook didn't ask can I come in. He didn't say thanks for letting me come on in. You can hear him barging into that. It isn't required that that formality be observed. Of course not. And I guess the difficulty in this case to me also is our standard of review. We have to be convinced that the district court made a factual mistake. Yeah, I'm completely aware of that. I do not dispute. This is not de novo review on the factual issues. However, you do look at it, and you have the benefit of this recording. And I just don't see how you can take the trooper's testimony as credible when you listen to that recording in the context of the situation at 5 o'clock in the morning when a man's woken up who says, hang on, hang on, obviously with the intent of don't come into my house, and then in a matter of two seconds mumbles come on in. And the consent has to have been found by the district court to be unequivocal and specific. Now, I don't think we're there, and I think it is clearly erroneous. Let's suppose that we thought that the entry that come in was properly found by the district court, or at least not clearly erroneous. Your second argument was that even if the entry was okay, the search was not. Why don't you tell us about that? Right. The justification, assuming we're legally into the house, and I don't think we are, but assuming that the police somehow make it legally into the house. Let me ask you to clarify something as you address that question. Are you claiming that the evidence was insufficient to show that a search warrant could issue under these facts? In other words, that the officer failed to give enough facts to demonstrate probable cause to search? What I'm saying is that what the officer legally and under the Constitution could have known was insufficient for a search warrant. Well, they knew there was a bright light coming from a far room. They knew that there was a strong odor of marijuana, and they saw a scale of the type that's used for measuring out drugs for search. The bright light was not, I don't believe, was put into the application for the search warrant, but the smell of marijuana and the scale. And the scale comes from being into the house. Correct. Right. And I also believe the marijuana smell does too. But, and then I don't know if you've seen the 28-J correspondence that Ms. Sayers-Fey and I went back and forth late yesterday afternoon. Right. I did see that, but the scale would be sufficient, it seems to me, to take this out of the realm of potentially a small amount for personal use and into a commercial type of operation. I'm going to disagree with that. Why isn't that a reasonable inference? Because there's many good reasons for people to have scales. That's actually not the test, though. The fact that there could be an innocent explanation isn't enough when the totality of the circumstances demonstrate that it's reasonable to think of a non-innocent explanation. And that's fair. I don't think that when you're looking at commercial trafficking as the crime that you're trying to establish probable cause for, that a smell of marijuana and a small little three-beam scale gets you there. And I would add that if the entry was illegal, the scale is taken out of the equation. And I think the strength of the marijuana smell through a crack of the door is also out of the equation. Well, the marijuana smell is a little unusual because you didn't describe it as the odor of burning marijuana.  You described it as a living kind of thing. There was humidity in the air. There was something that suggested that there was something living there that was marijuana rather than something that had been smoked. That is correct. The crime note was trafficking marijuana and just having a marijuana plant that would give such a smell. And it was a small home. It does not give you probable cause for trafficking. Alaska has a sort of unusual provision about privacy rights and the use of marijuana. But surely, at the very least, there's cause for further investigation as to whether this is marijuana for personal use or whether it's in quantities for distribution. Possibly further investigation, not for the search warrant that was applied for. And not for a search warrant but for an Alaska crime. I see I'm running out of time. I'd like to reserve the last little bit for rebuttal. You used quite a bit of it, too. We'll be gentle on rebuttals. We'll hear from the government. Good morning, Your Honors and Mr. Clendaniel. I'm Kim Sayers-Faye, and I'm honored to represent the government in this case. The government should prevail in this case because it did what was both constitutional and reasonable. It came to effectuate the warrant, the arrest warrant for Mr. Ennin, and it did so with warrant in hand, and they knocked and announced. And then when Mr. Ennin, again, reasonably requested that on that February day when it was 17 degrees, or excuse me, 14 degrees, that he be allowed not to be arrested in his underwear. He wanted to get his shoes and get his pants. That was reasonable and that was lawful for the officers to accede to that request. And once they did so, they had the right to enter his home, both because they had an arrest warrant. What's your authority that you can enter someone's home to effect the arrest warrant if they are willing to come out? I think that's a necessary corollary from the Albregtson case. Albregtson recognized that, and Gooch is another authority on that, that said if you have an arrest warrant, that gives you permission to effectuate an arrest within a home if necessary. And then in Albregtson, the court went on to say, well, if a person presents at the door, you cannot shove by them and sort of do a superfluous entry just to have a little look-see. But the court was very clear that the facts are of paramount importance. And this court in Albregtson went to the trouble to say, if he had receded, if the defendant had receded into the interior of the home, then the officer's entry would have been appropriate and would have been lawful. So in your view, if he had said audibly on the tape or in some other way, I'm going to go put my pants and shoes on, and I'll be back. And meanwhile, I want you to wait on the porch. I'll be out in a minute. So you think they could just come on in anyway? I do. I do. But if he chooses to go into his home, he does not have to. If he had said, for example, I'm here at my doorway, I'm in my underwear, take me now, I think they would have had to do that. But that's not what he said. He said, I want to get my... Do you need to win on this argument to win this case? I do not. I do not. Because he also consented. And I would just differ with counsel. If you listen to the audio tape from 43 to 47, it's difficult to hear because it's not a noise issue. It's not a sound quality issue. It's a mumbling issue and a speech issue. But what he said and what the officer testified was he said, he kind of started with a growl, frankly. It was a, let me get my shoes on, come on in. And it's hard to hear. And I've slowed the audio down. We slowed it down for the judge. But nonetheless, the judge determined as a factual matter, which this court does have to review under the clearly erroneous standard, that something was said. And he couldn't make out exactly what. But he did credit the officer's statement that it was come on in. And when you do listen to that audio, I think it's quite clear that he said, hang on, hang on. And you can hear that while the officer is knocking out there. He has a nice tone of voice. And then Mr. Annan answers the door. And then another factual finding, the court said that Mr. Annan, by his actions, invited the trooper in. And those actions to which he was referring was the fact that he opened the door. So this case doesn't even just mean. Well, opening the door doesn't mean that someone comes in. If the Girl Scout cookie seller comes to my door and I open the door, they can't just walk past me into my house. I think what the court said was that by his body language and whatever he said it accredited the trooper's testimony that what was said was an invitation, that it was come on in. And when you say that and you open the door and you step back to get your shoes and your pants. And the court was also influenced at that point by the fact that Mr. Annan was receding from the line of sight of the trooper. And contrary to what's in defendant's brief, the court did find that and the trooper did testify to that. Because of the way the door swung, if the trooper had not entered, he wouldn't have been able to keep his eyes on Mr. Annan, which obviously presents an officer's safety issue. At what point was Mr. Annan arrested? Was he arrested when the officer said, I'm here to arrest you? Does the officer have to physically declare you are under arrest? Or does he have to physically control him? No, at the point that he's not free to leave, I think when the officer said, we have an arrest warrant for you, partner, Mr. Annan was not free to leave. And I would say at that point he is under arrest. They are effectuating the arrest at the moment he knocks on the door and says, we have an arrest warrant for you, partner. And so at that point then he can follow him into the room as he puts on his pants and his shoes because he's got to keep track of the subject that he's just arrested. Absolutely, absolutely. And as an officer's safety matter, I think that's imperative. And we have to recognize that although he was effectuating a misdemeanor arrest, the officer was concerned for his safety. And as it turns out, rightly so. There was a loaded firearm that it appears that Mr. Annan answered the door with. He had a pipe bomb inside. So there were reasons, and there are reasons, for officers to certainly keep eyes on a defendant or a suspect, an arrestee. When they're effectuating an arrest, it would leave a great paramount to them. Why were they effectuating a traffic arrest at 5 o'clock in the morning? That's a good question, Your Honor. And I put that question to the officers at the evidentiary hearing, and they explained that well. There were two reasons. First, they had known about the arrest warrant for a couple of days, but they had had really other things that they had to prioritize. They also had to wait for enough people to get together at the same time so that they could go serve this arrest warrant because it was in sort of a remote area, a remote part of Wasilla. But the other reason that they did it was there were complaints from the neighbor, and what the neighbor said was, and the court found this, that there was hostile harassing, there were verbal threats made, and that Mr. Ennin went onto the property of his neighbor in a threatening manner. So they were really there to de-escalate that situation. They had an arrest warrant, and that was at the time that they were able to amass enough people to go do that in a safe manner. And as the trooper testified, it's not unusual for them in this area to effectuate arrest warrants at that hour. You've offered two reasons to justify the entry. One of them, they had a right to follow him, to keep him within sight. The other was that there was consent, and the court's finding was not clearly erroneous. Right. If we disagree with you on the first, do you lose? No. I think we have sort of belt suspenders and a drawstring here, Your Honor. First of all, we had the arrest warrant, so I think under Albrechtson and Gooch, we have the right to enter to effectuate that arrest warrant as soon as he retires into the home. We had consent. There's a third theory as well. You get to do a search incident to arrest, so as soon as we're effectuating that arrest, the officer has rights to put hands on the man and to check anything in the grab area. Since he had receded into the home and that fact is undisputed, he could have crossed the threshold. Once he did so, we had so much evidence to support the affidavit. There's simply no way out of this for him. I think the court really has a choice, but the choice that the district court made I think was correct in noting the warrant rationale, but it's not the only rationale. The consent and the search incident to arrest I think win the case for the government as well. If the court has no further questions, I'll take this.  Thank you. Thank you, Your Honor. Mr. Plandanio, you have a little time remaining. Thank you, Your Honor. I'd really like to answer any questions you have. When do you think the arrest took place?  This places the officers in a very awkward position because if it doesn't take place until they physically sort of touched him, until they sort of seized him, at that point he's got his pants and his shoes on. Is that right? Is that your view? No, they busted in and helped him get his pants and shoes on. When they had him physically constrained, he was allowed I believe to put his pants and shoes on at that point. I'm not saying when he was handcuffed. The arrest was when a trooper busted through the door. No, when he busted through the door is when I would say the arrest took place. You said busted through? Was there evidence? Well, you listen to the tape. Plump, plump. I mean, it's a quick movement. Was the door damaged? There's no evidence of it. Maybe I'm being a little too colorful. When he went through the door, you can hear from the tape that it was faster footsteps. Okay. Well, if he was arrested at that point, then doesn't the officer have the right to run a quick protective sweep to make sure there's nobody else that's going to leave out of a closet or a bedroom? Yes. I'm saying that that entry was legal because, and Judge Graber asked questions about this, that they should have waited for him to meet them at the door. But assuming that the arrest is legal, they can do a quick protective sweep of the immediate area. The government's position would allow you to search every inch of a small house and that you could just go room to room and it would always be the next, would be an adjoining area, and there would be no end to it, which would basically eviscerate the two prongs of Maryland v. Buey. You would only need one because everything would be within the area from which an attack could be launched. And the room that had the marijuana grow was secured by a spring. And it would be the same as if you arrested someone outside of a shed that was secured by a spring. Under the government's position, any officer could just search the outdoor shed, which I don't believe that's what the precedent permits. You would need to have some sort of reasonable suspicion, which the government has not said there was here, that there was a danger lurking in that secured area. If you would like to sum up, you're about two minutes over time. I don't want to take your time. Let me see here. Just in regards to the consent issue, I think the critical thing here is to consider two standards. One is clearly erroneous. It is a high standard. I think it's net. And the reason it's net is because the underlying test, it must be bet, is unequivocal and specific consent. And at 5 a.m. with the recording we have, I think the district court clearly erred by finding that there was consent. Thank you, counsel. We appreciate the arguments of both counsel. They've been very helpful. And the case is submitted.
judges: Alarcon, Graber, Bybee